IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. WUR

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

SUNDAY MAT WUR, APPELLANT.

Filed February 11, 2025.    No. A-24-230.

Appeal from the District Court for Lancaster County: ANDREW R. JACOBSEN, Judge. Affirmed.

Christopher L. Eickholt, of Eickholt Law L.L.C., for appellant.

Michael T. Hilgers, Attorney General, and P. Christian Adamski for appellee.

RIEDMANN, Chief Judge, and PIRTLE and ARTERBURN, Judges.

RIEDMANN, Chief Judge.

## I. INTRODUCTION

Sunday Mat Wur appeals from his conviction of possession of a firearm by a prohibited person following a jury trial in the district court for Lancaster County. Because we find the evidence sufficient to support his conviction, and because his claims of ineffective assistance of counsel are insufficiently alleged, or fail, we affirm the judgment of the district court.

## II. BACKGROUND

Wur was charged with possession of a firearm by a prohibited person, with the possession alleged to have occurred between December 13, 2022, and May 12, 2023. Following a jury trial, he was found guilty and was sentenced to 7 to 10 years' imprisonment. The following evidence, relevant to Wur's assigned errors on appeal, was adduced at trial.

- 1 -

At the beginning of trial, Wur and the State stipulated that during the period charged in the information, Wur was prohibited from possessing a firearm due to a prior felony conviction. On December 13, 2022, Wur was involved in a traffic stop, and officers with the Lincoln Police Department (LPD) noticed open alcohol containers in Wur's car and conducted a search of the vehicle. Officers located an unfired 9-mm bullet in the cup holder, and another unfired 9-mm bullet in the center console.

Officers decided not to issue Wur a citation, but instead to pass the information to the LPD's Gang/Safe Streets Task Force. However, after reviewing a report of the traffic stop, a superior officer decided Wur should be issued a citation. The officer assigned to locate Wur was unable to do so; instead, he issued a broadcast so that if other officers came in contact with Wur, they would know he needed to be issued a citation.

Based on the broadcast, on May 12, 2023, officers with the LPD gang unit began to surveil the residence of Wur's girlfriend. Wur and his girlfriend exited the home and officers made contact with Wur. Officers detained Wur and informed him he would be transported to the police station and interviewed about the broadcast. After Wur was transported to the police station, his girlfriend consented to the remaining officers searching the home. Wur's girlfriend told officers that Wur was living in the home with her.

In a bedroom containing both men's and women's clothing, officers found a box of ammunition and some loose ammunition on top of a dresser. The loose ammunition and the ammunition in the box were 9-mm bullets. Paperwork with Wur's name on it was also found on the same dresser as the bullets. The closet in the room contained mostly women's clothing, and in a basket in the closet, officers located a .22 caliber revolver and a 9-mm handgun. DNA testing of the 9-mm handgun showed a mixture of DNA, and the results supported Wur's inclusion as a contributor to that mixture.

Wur was charged with possession of a firearm by a prohibited person, a Class ID felony. Following his conviction and sentencing, Wur filed a notice of appeal and was appointed new counsel. Additional facts will be discussed below as necessary.

### III. ASSIGNMENTS OF ERROR

Wur assigns, reordered and restated, that the evidence was insufficient to support the conviction. He also assigns that he received ineffective assistance of trial counsel when counsel (1) stipulated during trial that he had been convicted of a felony; (2) did not object to the State's repeated references to the investigation being conducted by the LPD's gang unit; (3) advised him not to testify; and (4) failed to call his girlfriend, with whom he had resided at the time of his arrest, as a witness when she would have testified that she possessed and owned the firearms. He further assigns that he received ineffective assistance of counsel based on these cumulative errors.

### IV. STANDARD OF REVIEW

When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Gonzalez*, 32 Neb. App. 763, 5 N.W.3d 221 (2024).

Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law. *State v. Adams*, 33 Neb. App. 212, 12 N.W.3d 114 (2024). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id*.

An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *Id*. When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitute deficient performance by trial counsel. *Id*.

## V. ANALYSIS

### 1. SUFFICIENCY OF EVIDENCE

Wur assigns that the evidence was insufficient to support his conviction of possession of a firearm by a prohibited person. The State was required to put forth evidence showing that Wur, prohibited from possessing a firearm due to a prior felony conviction, possessed a firearm. See Neb. Rev. Stat. § 28-1206 (Cum. Supp. 2022). Wur does not argue that the State failed to prove he was a person prohibited from possessing a firearm by virtue of a prior felony conviction. Instead, Wur argues that there was no evidence to show he possessed the firearms at issue. We disagree.

There are two kinds of evidence, direct and circumstantial. See *State v. Dap*, 315 Neb. 466, 997 N.W.2d 363 (2023). Direct evidence directly proves the fact in dispute without inference or presumption. *Id.* Circumstantial evidence is evidence of one or more facts from which the existence of the fact in dispute may logically be inferred. *Id*. Circumstantial evidence is not inherently less probative than direct evidence, and a fact proved by circumstantial evidence is nonetheless a proven fact. *Id*.

Here, while no one saw Wur with a firearm in his hand, there was sufficient evidence presented from which the jury could infer that he had possessed a firearm sometime during the dates charged in the information. The evidence showed that two 9-mm bullets were found in Wur's vehicle on December 13, 2022. On May 12, 2023, loose bullets and a box of ammunition, all 9-mm, and paperwork in Wur's name were found on a dresser in the home of Wur's girlfriend in a room containing both men's and women's clothing. In the closet of the same room, a revolver and a 9-mm handgun were found. Wur's girlfriend told officers that Wur was living in the home with her. Moreover, DNA testing of the 9-mm handgun showed a mixture of DNA, and the results supported Wur's inclusion as a contributor to that mixture.

Based on this evidence, the jury could have concluded that at some point Wur physically possessed the 9-mm firearm. The evidence, viewed in the light most favorable to the prosecution, was such that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This assignment of error fails.

## 2. INEFFECTIVE ASSISTANCE OF COUNSEL

Wur assigns numerous ways in which he believes his trial counsel was ineffective. We first set forth the general framework for our analysis before addressing each claim individually. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Adams*, 33 Neb. App. 212, 12 N.W.3d 114 (2024).

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Adams, supra*. To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id*. To show prejudice from counsel's deficient performance, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id*.

### (a) Stipulation to Felony

Wur assigns that trial counsel was ineffective for stipulating that he had been convicted of a felony. He argues that trial counsel should not have conceded to a necessary element of the crime charged. Also, Wur argues that because his prior felony conviction was for a marijuana related crime and many people support reforming criminal laws related to marijuana, it would not have prejudiced him if the jury knew his felony conviction was for a marijuana related crime.

We first note that defense counsel does not perform in a deficient manner simply by failing to make the State's job more difficult. See *State v. Ash*, 293 Neb. 583, 878 N.W.2d 569 (2016). But even if we assumed that stipulating to, and not informing the jury of the basis for, Wur's prior felony conviction was deficient performance, Wur cannot show prejudice. The felony for which a person was previously convicted has no bearing on whether he possessed a firearm while being prohibited from doing so. As discussed above, there was sufficient evidence to support that Wur possessed a firearm, and the basis for his prior felony conviction would have had no effect on the elements the State was required to prove, or on the evidence used to prove those elements. Even assuming he could show deficient performance, Wur cannot show prejudice, and this assignment of error fails.

### (b) Evidence of Gang Unit Involvement

Wur assigns that trial counsel was ineffective for failing to object to evidence that the LPD's gang unit was involved in the investigation. He argues that the State repeatedly elicited testimony about the LPD gang unit. We conclude that even assuming Wur could show deficient performance, he cannot show prejudice.

Prior to trial, trial counsel filed a motion in limine seeking to prohibit the State from adducing any evidence referring to Wur as a gang member or alleging any associations with an organized criminal unit. The district court sustained this motion, with the exception that evidence could be presented that the members of the Lancaster County Gang Task Force contacted Wur on May 12, 2023.

The word "gang" was used almost exclusively to identify the unit in which various officers involved in the investigation worked. The officer involved in the December 2022 traffic stop explained that investigations involving felons in possession of ammunition was an area of specialty for the LPD's Gang/Safe Streets Task Force. Officers testifying at trial who were part of the task force referred to it by the name "gang unit," but explained that although the unit is assigned follow-up investigations with a gang nexus, it was "also responsible for suppressing criminal activity." They described conducting follow-up investigations for felony assaults or shootings, and investigating information or tips related to people possessing firearms that are prohibited from doing so. The firearms coordinator for the narcotics unit with the LPD Gang Task Force detailed that his responsibilities were mainly to investigate firearm related crimes. In closing arguments, the State referred to the "gang" task force only twice.

While many of the officers used the word "gang" to identify their specific LPD unit, they also explained that the unit handled more than just crime related to gangs. There was no testimony that Wur was in a gang or suspected to be in a gang. Based on this record, the use of the word "gang" in the manner and context in which it was used at trial, was not prejudicial. Even if we assumed Wur could establish deficient performance, given the DNA evidence, the presence of bullets in his car and in a room which he occupied, along with the location of the gun, Wur cannot establish prejudice. This assignment of error fails.

(c) Waiver of Right to Testify

Wur assigns that trial counsel was ineffective in advising him not to testify at trial. His assigned error is simply "[Wur] received the ineffective assistance of counsel because trial counsel advised [Wur] to not testify and to waive his right to testify in his defense at trial." Brief for appellant at 5. This assignment of error does not meet the specificity required to raise a claim of ineffective assistance of counsel on direct appeal. See *State v. German*, 316 Neb. 841, 7 N.W.3d 206 (2024).

In *State v. German, supra*, the defendant assigned that counsel was ineffective "in respect to [a]dvice [p]rovided on the [d]ecision to [w]aive the [r]ight to [t]estify [b]y [p]roviding [u]nreasonable [a]dvi[c]e [n]ecessary for a [m]eaningful [d]ecision." *Id*. at 872, 7 N.W.3d at 229. The Nebraska Supreme Court determined that the assignment lacked the specificity demanded on direct appeal. It noted that assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity. *Id*.

Wur's assigned error lacks the same specificity as did the assigned error in *German*. Thus, it lacks the necessary specificity to be addressed on appeal and we decline to do so.

(d) Failure to Call Wur's Girlfriend as Witness

Wur assigns that trial counsel was ineffective in failing to call his girlfriend to testify, as she would have testified that the firearms belonged to her and that Wur did not possess them and was not necessarily aware that she possessed them in their shared residence. Trial counsel's decisions that amount to reasonable trial strategy do not constitute deficient performance. *State v. Wood*, 310 Neb. 391, 966 N.W.2d 825 (2021).

- 5 -

The Supreme Court has cautioned that it is more the exception than the rule that defense counsel's strategy can be reasonably inferred from the trial record on direct appeal. See *id*. Here, however, there is indication in the record that trial counsel had evaluated whether the testimony from Wur's girlfriend would have been beneficial, given that she could be asked about previous statements she had made to police. At a pretrial hearing, defense counsel stated that if the girlfriend testified consistent with her prior statement, it "could potentially be harmful for" Wur; however, if she testified to the contrary, "then the State may want to use it as an inconsistent statement to show that she's not being truthful." The record on direct appeal is therefore sufficient to determine that trial counsel's decision not to call Wur's girlfriend as a witness was a reasonable matter of trial strategy. This assignment of error fails.

### (e) Cumulative Error

Wur argues that based on the cumulative effect of trial counsel's deficient performance, he received ineffective assistance of counsel. As we have found that Wur's claims are either insufficiently alleged, or fail to establish ineffective assistance of trial counsel, this assigned error also fails.

### VI. CONCLUSION

The evidence was sufficient to support the conviction. Wur's claim of ineffective assistance of trial counsel regarding counsel's advice not to testify lacks the specificity required for review and we do not address it; it is not preserved for postconviction relief. The remaining claims of ineffective assistance of counsel all fail. We affirm the judgment of the district court.

AFFIRMED.